# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANNIA

JOVAUGHN MATTHIE,          )
                                    )
            Plaintiff,      )
                                    )
        vs.               )     Civil Action No. 3:25-cv-00146
                                    )     Judge D. Brooks Smith
SANDY TOWNSHIP, PENNSYLVANIA )
TRAVIS A. GOODMAN, CLEARFIELD )
COUNTY, PENNSYVANIA and RYAN P. )
SAYERS,                        )
                                    )
          Defendants.   )

## <u>MEMORANDUM and ORDER OF COURT</u>

Plaintiff Jovaughn Matthie ("Matthie") has commenced this civil rights action pursuant to 42 U.S.C. § 1983 and Pennsylvania law against Sandy Township and Officer Travis Goodman ("Goodman"). It arises out of his arrest and prosecution in connection with a physical altercation that took place in Sandy Township in October 2023. Matthie alleges that he was charged without probable cause, that the nature of his charges reflects selective enforcement based on race, and that Sandy Township maintained an unlawful practice of overcharging African-American defendants. Presently before the Court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Motion is granted, and the charges against Sandy Township and Goodman are dismissed with prejudice.

1

## I.    Background[1]

Matthie is an African American Man of Jamaican descent. (FAC at ¶ 11). On the evening of October 30, 2023, at approximately 5:00 p.m., he was involved in a physical altercation with Stephen Hale ("Hale") in Sandy Township, Pennsylvania. (*Id.* at ¶¶ 11–24). Matthie, a long-haul trucker, was picking up a shipment at Domtar—a paper company where Hale worked—when tensions escalated between the two men. (*Id.*). Matthie alleges that, after some posturing and name-calling, Hale punched him and that he responded in self-defense until Hale fell, at which point Matthie ran away. (*Id.* at ¶¶ 20–24). Shortly thereafter, Hale's supervisor reported the incident to Sandy Township Police. (*Id.* at ¶¶ 30–32). Officers photographed Hale's injuries and took his statement, which described a very different sequence of events. (*Id.*) According to Hale, Matthie became irritated and spat in his face after Hale both asked Matthie where he was going and referred to him as "hoss." (ECF 19-1 at 3). Hale said he then pushed Matthie backward to create some space—after which Matthie attacked him. (*Id.*).

Hale was transported to the emergency room after speaking with responding police officers. (FAC at ¶ 33). The incident report reflects that Hale had "several broken out front teeth, a large cut to the right eye brow/temple area with moderate

---

[1] The operative pleading is Matthie's First Amended Complaint, filed August 4, 2025. ECF 14 ("FAC").

blood loss . . . contusions on his ribs" and "was having trouble standing on his own and was very dizzy and disoriented." (ECF 19-1 at 3).

After Officer Travis Goodman's ("Goodman") shift began at approximately 6:00 p.m., he was briefed on the incident and undertook further investigation. (FAC at ¶¶ 35–37). As part of that investigation, Goodman and another officer went to the emergency room where Hale was being treated and spoke with Hale and hospital staff about Hale's condition and the circumstances of his encounter with Matthie. (FAC at ¶ 36). Goodman reported that nursing staff suspected that Hale had suffered "multiple facial fractures," an "orbital socket fracture, clavic[le] fracture, humerus fracture and other severe injuries," and that Hale would be "undergoing several further tests." (ECF 19-1 at 4).

Later that night, Goodman prepared a criminal complaint and an affidavit of probable cause ("affidavit") and applied for an arrest warrant. (FAC at ¶¶ 42–44). A magistrate issued the warrant, and Goodman arrested and charged Matthie with two counts of simple assault,[2] one count of harassment,[3] and one count of aggravated

---

[2] Matthie was charged under both 18 Pa. C.S. § 2701(a)(1), which prohibits "attempt[ing] to cause or intentionally, knowingly or recklessly caus[ing] bodily injury to another," and 18 Pa. C.S. § 2701(a)(3), which prohibits "attempt[ing] by physical menace to put another in fear of imminent serious bodily injury."

[3] "A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person: (1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same." 18 Pa. C.S. § 2709(a)(1).

assault[4]—a first degree felony. (FAC at ¶ 38; *see also* ECF 19-1 at 2–3). The next day, bail was set at $50,000 secured. (FAC at ¶ 71). Matthie alleges that he was unable to post bail and remained incarcerated for nearly a year while the criminal case remained pending. (*Id.* at ¶¶ 49, 71). Matthie's case eventually went to trial on October 8, 2024. (*Id.* at ¶ 77). Matthie proceeded *pro se* and was acquitted on all counts. (*Id.* at ¶¶ 77, 85).

Matthie then filed this civil action asserting claims under 42 U.S.C. § 1983 and Pennsylvania law arising out of his arrest and prosecution. As relevant here, Matthie asserts § 1983 claims against Goodman for malicious prosecution and selective enforcement/prosecution, a malicious-prosecution claim against Goodman under Pennsylvania law, and a § 1983 municipal-liability claim against Sandy Township under *Monell v. Department of Social Services,* 436 U.S. 658 (1978). (FAC at ¶¶ 100–108, 118–126, 136–44, 154–61). Goodman and Sandy Township moved to dismiss under Rule 12(b)(6). (ECF 19). Matthie opposed the motion (ECF 22), and Defendants replied (ECF 23). The motion is now ripe for disposition.[5]

---

[4] "A person is guilty of aggravated assault if he . . . attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa. C.S. § 2702(a)(1).

[5] The Court has subject matter jurisdiction over Matthie's federal claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343. The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the related state law claim.

## II.    Standard of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In resolving such a motion, a district court must accept all well-pled factual allegations as true and view them in the light most favorable to the plaintiff. *See Fowler,* 578 F.3d at 210. Indeed, a district court must do so "even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely." *Id.* at 213 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). However, a court need not accept as true "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

To avoid dismissal, a complaint must contain sufficient factual matter, accepted as true, to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. That standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A plaintiff must plead sufficient factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In addition to the complaint, a district court ruling on a motion to dismiss may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Handal v. Innovative Indus. Props., Inc.,* 157 F.4th 279, 292 (3d Cir. 2025) (citation omitted). Otherwise, a district court "may not consider matters extraneous to the pleadings." *Doe v. Princeton Univ.,* 30 F.4th 335, 342 (3d Cir. 2022) (citation omitted). Where a defendant attaches documents as exhibits to a motion to dismiss, a district court may only consider them if they are "integral to or explicitly relied upon in the complaint" *Doe*, 30 F.4th at 342 (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)); *see also Hickey v. Univ. of Pittsburgh,* 81 F.4th 301, 308 n. 5 (3d Cir. 2023) ("On a motion to dismiss, a district court may only consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document[.]" (internal quotation marks and citation omitted)).

### III.    Analysis

### A. Qualified Immunity

As an initial matter, Goodman contends that the federal claims[6] against him must be dismissed because he is protected by qualified immunity.[7] Qualified immunity "shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Peroza-Benitez v. Smith,* 994 F.3d 157, 165 (3d Cir. 2021) (citation modified) (quoting *Mullenix v. Luna,* 577 U.S. 7, 11 (2015)). To determine whether Goodman is entitled to qualified immunity, two questions are relevant for each claim asserted against him: (1) whether the facts alleged plausibly show that Goodman "violated a statutory or constitutional right" and (2) whether "the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011) *(quoting Harlow v. Fitzgerald,* 457 U.S. 800 (1982)).

---

[6] "[Q]ualified immunity is a defense only to violations of federal law under § 1983. Immunity from state law claims is governed by the state's immunity doctrine." *El v. City of Pittsburgh,* 975 F.3d 327, 334 (3d Cir. 2020). Goodman does not invoke Pennsylvania official immunity under 42 Pa. Cons. Stat. § 8546.

[7] Goodman bears the burden of establishing his entitlement to qualified immunity. *See Reedy v. Evanson,* 615 F.3d 197, 223 (3d Cir. 2010).

### 1. Section 1983 Malicious Prosecution

Matthie alleges that Goodman lacked probable cause to arrest and charge him, thereby violating his rights under the Fourth and Fourteenth Amendments. (FAC at ¶¶ 100–108). At the outset, however, his malicious prosecution theory cannot proceed under the Fourteenth Amendment. To the extent Matthie invokes substantive due process, that route is strictly foreclosed by *Albright v. Oliver*, in which the U.S. Supreme Court held that a § 1983 malicious prosecution claim cannot be grounded in substantive due process. 510 U.S. 266, 271 (1994) ("[I]t is the Fourth Amendment, and not substantive due process, under which [a malicious prosecution] claim must be judged."); *see also Merkle v. Upper Dublin Sch. Dist.,* 211 F.3d 782, 792 (3d Cir. 2000) ("[A] claim of malicious prosecution under section 1983 cannot be based on substantive due process considerations[.]" (*citing Albright*, 510 U.S. at 272)).

Nor has Matthie plausibly pleaded a procedural due process claim. Although a § 1983 malicious prosecution claim may, in some circumstances, "include police conduct that violates . . . the procedural due process clause," *Torres v. McLaughlin,* 163 F.3d 169, 173 (3d Cir. 1998), Matthie does not identify what additional process he was owed or how the procedures available to him were constitutionally

inadequate.[8] Instead, Matthie merely alleges that his due process rights were violated because "there was no probable cause for [his] arrest." Pltf. Br. at 14; *see also* FAC at ¶ 101. Such claims must be brought under the Fourth Amendment. *Washington v. Hanshaw,* 552 F. App'x 169, 172–173 (3d Cir. 2014) ("[I]f a right to be free from prosecution absent probable cause exists, it must [] be grounded on the Fourth Amendment's prohibition on unreasonable searches and seizures." (citing *Albright,* 510 U.S. at 273)).

Accordingly, if Matthie's § 1983 malicious prosecution claim may proceed, it is only under the Fourth Amendment. And Goodman is entitled to qualified immunity "if a reasonable officer could have believed that probable cause existed" to arrest and charge Matthie in light of clearly established law and the information available to Goodman at the time. *Blaylock v. City of Philadelphia,* 504 F.3d 405, 411 (3d Cir. 2007) (quoting *Hunter v. Bryant,* 502 U.S. 224, 228–29 (1991).

Generally, probable cause exists when "the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be

---

[8] *See Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006) ("To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that . . . the procedures available to [the plaintiff] did not provide 'due process of law.'"); *see also Hoffman v. Karpovich,* No. CV 22-1005, 2022 WL 1774131, at *6 (E.D. Pa. June 1, 2022) (dismissing a Fourteenth Amendment claim where the plaintiff "fail[ed] to identify any process not afforded" to him).

arrested." *Harvard v. Cesnalis,* 973 F.3d 190, 200 (3d Cir. 2020).[9] But where, as here, a neutral magistrate found probable cause in connection with a warrant application, a plaintiff may proceed only by plausibly alleging that "(1) the police officer knowingly and deliberately, or with a reckless disregard for the truth, made statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material or necessary to the finding of probable cause." *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000) (internal quotation marks and citation omitted).

On a fair reading of the FAC and Matthie's briefing, Matthie advances two theories for why Goodman purportedly lacked probable cause to arrest and charge him. First, he contends that Goodman exaggerated Hale's injuries in the warrant application, thereby inflating the basis for a felony assault charge. Second, he contends that Goodman did not interview him before seeking the warrant and therefore failed to consider (or disclose) facts supporting self-defense—an affirmative defense that Matthie says defeated probable cause to charge him at all.[10] I address each theory in turn.

---

[9] This analysis focuses on what the officer "knew at the time of arrest." *Id.* at 202. Nor does it matter that "a person is later acquitted of the crime for which she or he was arrested." *Halsey*, 750 F.3d at 299 (citation omitted).

[10] *See* Pltf. Br. at 6 (arguing that "there was no probable cause for bringing any of these charges against Plaintiff because it was apparent from the outset that Plaintiff lawfully acted in self defense after being attacked"); *id.* at 7 (arguing that no probable

### a. Misrepresented Facts

Matthie first contends that Officer Goodman, in the criminal complaint and affidavit, "created [a] litany of false, serious injuries to Hale attributed to the fight" in order to "manufacture serious bodily injury" and justify a charge of aggravated assault under 18 Pa. C.S. § 2702(a)(1). Pltf. Br. at 22. Section 2702(a)(1) makes it a felony to "attempt[] to cause serious bodily injury to another, or cause[] such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa. C.S. § 2702(a)(1). "Serious bodily injury" is defined as injury that causes "permanent disfigurement, protracted loss or impairment of any bodily member or organ." 18 Pa. C.S. § 2301.

Matthie identifies two categories of alleged falsehoods. First, the criminal complaint states that Hale suffered "severe facial fractures, contusions, cuts and abrasions" and was "undergoing several scans and tests for his injuries and will be hospitalized for a period of time." FAC at ¶ 42; *see also* ECF 19-1 at 6. Second, the affidavit recounts that hospital staff "believe[d]" Hale had suffered "multiple facial fractures, orbital socket fracture, clavicle fracture, humerus fracture and other severe injuries" and would undergo further testing. FAC at ¶ 44; *see also* ECF 19-1 at 10.

---

cause existed because "[a]t no point prior to filing his criminal complaint and affidavit of probable cause did Goodman ever interview or have a colleague interview Plaintiff"); *id.* at 10 (arguing that no probable cause existed with respect to the aggravated assault charge because "Goodman resorted to falsehoods to establish a serious injury" in his criminal complaint and affidavit).

According to Matthie, those descriptions were "without basis" and "patently false." FAC at ¶ 44.[11]

Even accepting those allegations for purposes of this motion, Matthie must still plausibly allege that the misstatements were "material, or necessary," to the magistrate's probable-cause finding. *Wilson,* 212 F.3d at 787. Materiality is assessed by "excis[ing] the offending inaccuracies" and asking whether the "corrected" affidavit would still establish probable cause. *Reedy*, 615 F.3d at 213.

Here, even with the challenged descriptions removed, the affidavit alleges that Hale "was having trouble standing on his own and was very dizzy and disoriented"—hallmarks of a concussion[12]—and that he sustained "several broken

---

[11] It is not entirely clear whether Matthie alleges that the challenged statements were false because the nursing staff's assessment proved incorrect, or instead, because Goodman fabricated the staff's statements outright. To the extent Matthie's theory is the former, Goodman cannot be deemed reckless for merely relaying the opinions of medical staff who are better situated to evaluate the nature and extent of a patient's injuries. That sort of reliance does not amount to "reckless disregard" for the truth. *See Reedy,* 615 F.3d at 213 (explaining that reckless disregard exists only where the affiant "must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." (internal quotation marks and citation omitted))

[12] *See, e.g., Concussion,* Mayo Clinic (Jan. 12, 2024), https://www.mayoclinic.org/diseases-conditions/concussion/symptoms-causes/syc-20355594 (noting that concussion symptoms may include difficulty with balance, confusion, and dizziness). I may take judicial notice of such generally accepted medical information from a readily accessible source of indisputable accuracy. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.,* 551 U.S. 308, 322 (2007) (stating that "when ruling on Rule 12(b)(6) motions to dismiss," courts may consider "matters of which a court may take judicial notice"); *Gov't of Virgin Islands v. Gereau,* 523 F.2d 140, 147 (3d Cir. 1975) (judicial notice is proper for facts "capable of immediate and

out front teeth, a large cut to the right eye brow/ temple area with moderate blood loss and also contusions on his ribs." (ECF 19-1 at 9). At a minimum, those allegations would permit a reasonable officer (and magistrate) to conclude that Hale suffered "serious bodily injury" within the meaning of Pennsylvania law. *See, e.g., Commonwealth v. Santiago*, 294 A.3d 482, 486 (Pa. Super. 2023) (concussion with confusion, dizziness, and memory loss constituted "serious bodily injury"); *Commonwealth v. Kinney*, 157 A.3d 968, 973 (Pa. Super. 2017) (chipped teeth, loss of consciousness, and head bruising/swelling supported serious bodily injury); *Commonwealth v. Lyons*, No. 3571 EDA 2018, 2019 WL 3948412, at *1 (Pa. Super. Aug. 21, 2019) ("Losing four teeth constitutes serious bodily injury."); *Commonwealth v. Hanna*, 2019 WL 6652177, at *3 (Pa. Super. Dec. 6, 2019) (finding sufficient proof of serious bodily injury where victim suffered a concussion).

Nor does § 2702(a)(1)'s *mens rea* component defeat probable cause here. "When a victim actually sustains serious bodily injury . . . the statute's intent requirement can be met if the defendant acts recklessly under circumstances manifesting an extreme indifference to human life." *Commonwealth v. Burton*, 2

---

accurate determination by resort to easily accessible sources of indisputable accuracy" (citation omitted)).

A.3d 598, 602 (Pa. Super. 2010). And Pennsylvania courts have sustained aggravated-assault charges on conduct far less severe than was alleged here. *See, e.g., Commonwealth v. Patrick*, 933 A.2d 1043, 1047 (Pa. Super. 2007) (holding that a single punch to the head "was enough to establish a *prima facie* case for the offense of aggravated assault"). In short, even crediting Matthie's allegations that Goodman overstated certain injuries, the corrected warrant materials would still support probable cause for aggravated assault. Matthie's theory of an inadequate showing of probable cause does not plausibly establish a constitutional violation.

### b. Self-Defense and Failure to Interview Matthie

Matthie's second theory fares no better. He contends that Goodman lacked probable cause to charge him with *any* offense because "it was apparent from the outset that [Matthie] lawfully acted in self defense" and because Goodman did not interview him to investigate whether such a defense applied before filing his criminal complaint and affidavit. Pltf. Br. at 6–7. Matthie relies on Pennsylvania's self-defense statute, which provides that force is justified "when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa. C.S. § 505(a).

The problem with this argument is twofold. First, self-defense under § 505 is, of course, an affirmative defense. *See Commonwealth v. Rivera,* 108 A.3d 779, 787

14

n. 2 (Pa. 2014). And, in this Circuit, where an affirmative defense arises under common law or a generally applicable statute—as opposed to appearing in the statute defining the offense itself[13]—an officer assessing probable cause is not required to resolve that defense before seeking a warrant. *See Holman,* 564 F.3d at 231 ("[T]he defense of necessity need not have been considered in the assessment of probable cause for arrest for trespass at the scene."); *Sands v. McCormick*, 502 F.3d 263, 269 (3d Cir. 2007) (stating that it is a "faulty premise" to urge that affirmative defenses, such as the statute of limitations, are "relevant considerations at the time a police officer files charges"). In *Holman*, for example, the Third Circuit declined to require an officer to consider a necessity defense when assessing probable cause for trespass because whether the defense applied was "not clear cut" and turned on disputed facts. 564 F.3d at 231. The Court reasoned that requiring a charging officer "to resolve these questions, and painstakingly to weigh possible defenses, would be impractical." *Id.*

That same logic applies to self-defense in this setting. As another district court in this Circuit has explained:

---

[13] The Third Circuit has held that where an affirmative defense is "specifically included in the statute setting forth the elements of the crime," an officer must "'act[] reasonably . . . under the facts and circumstances' known to him" to determine whether the affirmative defense applied." *Holman v. City of York, PA*, 564 F.3d 225, 230 (3d Cir. 2009) (quoting *Radich v. Goode*, 886 F.2d 1391, 1396–97 (3d Cir.1989)).

[C]laims of self-defense to an assault necessarily admit involvement in
a violent altercation. Thus, self-defense is inherently an issue that must
be decided at trial, not by a police officer or a judge at a hearing to issue
an arrest warrant. In other words, the forum in which to exercise a
defense of self-defense . . . is at trial, not in a subsequent civil rights
civil suit that challenges the sufficiency of an affidavit of probable
cause upon which an arrest warrant was issued by a judge.

*Gorman v. Bail,* 947 F. Supp. 2d 509, 523 (E.D. Pa. 2013); *see also Davis v. Malitzki,*
451 F. App'x 228, 233 (3d Cir. 2011) (holding that whether an officer "should have
perceived [a defendant] as acting in self-defense . . . could not be legally
determinative of whether there was probable cause" to arrest the defendant); *Berrios
v. City of Philadelphia*, 96 F. Supp. 3d 523, 532 (E.D. Pa. 2015) ("[T]he fact that
Plaintiff was acting in self-defense, even if true[,] . . . cannot overcome a finding of
probable cause.").

Relatedly, probable cause is not defeated simply because an officer did not
interview a suspect before arresting him. *See Merkle,* 211 F.3d at 789 (3d Cir.2000)
(finding probable cause not defeated by failure to interview suspect before arrest);
*Miller v. Cuneo,* No. CA 11-124, 2012 WL 4926471, at *7 (W.D. Pa. Oct. 16, 2012)
(rejecting argument that an officer lacked probable cause "because, prior to the
arrest, he did not ask Plaintiff what occurred on the evening in question and did not
have any information regarding who the aggressor was"). To be sure, Matthie's
allegation that he spent a substantial time incarcerated before getting to tell his side
of the story is serious and troubling. But the question here is whether the warrant

materials plausibly show that Goodman lacked probable cause in seeking the warrant.

They do not. Self-defense is an affirmative defense that Goodman was not required to resolve at the charging stage of the prosecution, and Goodman's failure to interview Matthie does not, by itself, negate probable cause. Matthie therefore has not plausibly alleged a Fourth Amendment violation and Goodman is protected by qualified immunity.[14] Matthie's malicious prosecution claim will be dismissed.

## 2. Section 1983 Selective Enforcement and Prosecution

I turn next to Matthie's Equal Protection claim. He alleges that Goodman, motivated by racial animus, charged him with aggravated assault rather than simple assault. (FAC at ¶¶ 136–144). According to Matthie, that charging decision differs from the treatment accorded similarly situated white individuals, and therefore violated the Equal Protection Clause. (*Id.*).

There is no serious dispute that, by the time of Matthie's arrest, it was clearly established that selective enforcement of the law on the basis of race violates the Equal Protection Clause. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("[T]he Constitution prohibits selective enforcement of the law based on

---

[14] Because Matthie has failed to establish a factual basis for the purported constitutional violation, I need not inquire as to whether the rights Matthie identifies were clearly established at the time of the purported violation. *See Karns v. Shanahan*, 879 F.3d 504, 520 (3d Cir. 2018) ("[T]he failure of either prong will result in application of qualified immunity[.]").

considerations such as race.").[15] So whether Goodman is protected by qualified immunity turns on whether Matthie has plausibly alleged that Goodman violated that clearly established right. He has not.

To state a selective-enforcement claim, a plaintiff must plausibly allege "(1) that he was treated differently from other similarly situated individuals, and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion." *Dique v. New Jersey State Police*, 603 F.3d 181, 184 n. 5 (3d Cir. 2010) (internal quotation marks and citations omitted). Put differently, the complaint must plead facts supporting both "discriminatory effect" and "discriminatory purpose." *Carrasca v. Pomeroy*, 313 F.3d 828, 834 (3d Cir. 2002).

### a. Discriminatory Effect

To plead discriminatory effect, Matthie must plausibly allege that he "is a member of a protected class and that []he was treated differently from similarly situated individuals in an unprotected class." *Bradley v. United States*, 299 F.3d 197, 206 (3d Cir. 2002). Goodman does not dispute that Matthie, a black man, is a member of a protected class. The question, then, is whether the FAC plausibly

---

[15] *See also, e.g., Parada v. Anoka Cnty.,* 332 F. Supp. 3d 1229, 1245 (D. Minn. 2018) ("The law on selective enforcement based on race and alienage is clearly established"); *Giron v. City of Alexander,* 693 F. Supp. 2d 904, 942 (E.D. Ark. 2010) ("[I]t is clearly established that selective enforcement of the law violates the Equal Protection Clause[.]").

alleges that Goodman treated Matthie less favorably than similarly situated non-protected individuals.

For equal protection purposes, individuals are similarly situated when they are "alike 'in all relevant respects.'" *Harvard,* 973 F.3d at 205 (quoting *Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992)). A plaintiff may satisfy their burden by identifying comparators who were treated more favorably. *Bradley*, 299 F.3d at 206. And, although "similarly situated" does not mean "identically situated," *Harvard*, 973 F.3d at 205, such comparators must be sufficiently similar that a prudent person, "looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated," *id.* at 206 (quoting *Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortg. Fin. Corp.,* 246 F.3d 1, 8 (1st Cir. 2001)).

Here, Matthie offers as comparators three white individuals who were involved in physical altercations, arrested (at least with some participation) by Officer Goodman, and were not prosecuted for aggravated assault—Hale himself, Richard Smeal,[16] and Jacob Battaglia.[17] *See* Pltf. Br. at 8–10; 17–18. However, none of these individuals are similarly situated to Matthie in all respects that matter to the challenged charging decision.

---

[16] *See Commonwealth of Pennsylvania v. Richard William Smeal* (Docket No. CP-17-CR-0000709-2024).

[17] *See Commonwealth of Pennsylvania v. Jacob R. Battaglia* (Docket No. CP-17-CR-0000558-2024).

Matthie first points to Hale, whom he characterizes as the aggressor in their altercation. But the relevant comparison is not simply whether both men were involved in the same fight; it is whether they were similarly situated with respect to the facts bearing on probable cause for aggravated assault. Unlike Hale—who was reported to have sustained serious bodily injuries—Matthie was not reported to have suffered any injuries at the time.[18] That difference is directly relevant to a charging decision under § 2702(a)(1). *See, e.g., Burton,* 2 A.3d at 602 (distinguishing cases in which serious bodily injury was sustained from those in which it was not).[19]

---

[18] Although Matthie alleges that he suffered "a terrible headache" after the altercation (FAC at ¶ 25), he does not allege that he reported this symptom to the responding officers or that Goodman otherwise knew of it when he sought the warrant.

[19] To be sure, a victim need not actually sustain serious bodily injury to support a charge of aggravated assault. *See Commonwealth v. Alexander,* 383 A.2d 887, 889 (Pa. 1978) (explaining that even absent serious bodily injury, "a charge of aggravated assault can be supported [] if the evidence supports a finding that the blow delivered was accompanied by the intent to inflict serious bodily injury."). But the presence or absence of serious bodily injury is certainly a "relevant" consideration in a charging decision. Where a victim has not suffered serious bodily injury, the Government must establish the defendant's specific intent to inflict serious bodily injury, which may be "gleaned from the other circumstances surrounding" the attack. *Alexander*, 383 A.2d at 889. Those circumstances include "1) if the defendant 'was disproportionately larger or stronger than the victim;' 2) whether the defendant would have escalated his attack but was restrained from doing so; 3) whether the defendant was in possession of a weapon; and 4) 'statements before, during, or after the attack which might indicate [defendant's] intent to inflict further injury upon the victim.'" *Burton,* 2 A.3d at 602 (quoting *Alexander*, 383 A.2d at 889). By contrast, where the victim actually sustains serious bodily injury, the *mens rea* element may be satisfied by "reckless[ness] under circumstances manifesting an extreme indifference to human life," without the same need to infer intent from surrounding factors. *Id.* at 602

Whatever the ultimate merits of Matthie's account of the altercation, Hale and Matthie were not alike "in all relevant respects" as to the perceived severity of injuries reported to law enforcement. *Harvard*, 973 F.3d at 205.

Matthie's next comparator, Richard Smeal, was arrested after attempting to steal a woman's purse. (ECF 19-4 at 6).[20] The incident report reflects that Smeal pointed an air-soft rifle at the victim, demanded money, and during an ensuing struggle struck her in the head and face with the gun and his fists. (*Id.*). Smeal was charged with multiple offenses, including three felonies and two counts of simple assault. (ECF 19-5 at 2). But the report does not indicate that the victim suffered any bodily injury, let alone serious injury. Nor does it state that she required medical treatment. That distinction, again, bears directly on whether aggravated assault was a plausible charge and makes Smeal an inapt comparator.

Finally, Matthie points to the matter of Jacob Battaglia. The incident report there indicates that Battaglia and another individual "were wrestling around as friends" until the situation escalated into a fight in which Battaglia allegedly dug his fingers into the victim's eye sockets. (ECF 19-6 at 3). Although the victim suffered "major damage to the eyes," he initially declined to pursue criminal charges. (*Id.*).

---

[20] Although Smeal's incident report and criminal docket (along with those of Battaglia) are attached to defendants' motion to dismiss, I may consider them because they are "integral to" and "explicitly relied upon in the complaint." *Doe*, 30 F.4th at 342 (citation omitted); *see* FAC at ¶¶ 89–90. Matthie also does not object to their introduction and cites them throughout his brief. *See* Pltf. Br. at 9–10, 18.

While no two unrelated incidents will ever be exactly the same, those circumstances—an initial consensual scuffle between acquaintances and a victim's reluctance to press charges—are not "roughly equivalent" to a report that a stranger unexpectedly charged and repeatedly punched another person in the face and head, producing the injuries ascribed to Hale here. *Harvard*, 973 F.3d at 205 (citation omitted).[21]

Because Matthie's proposed comparators differ in material ways bearing on the challenged charging decision, he has not plausibly alleged discriminatory effect.

### b. Discriminatory Purpose

Even if Matthie could plausibly allege discriminatory effect, his selective enforcement fails for the independent reason that he has not plausibly alleged discriminatory purpose. An equal protection claim of this kind requires "an element of intentional or purposeful discrimination." *PG Pub. Co. v. Aichele*, 705 F.3d 91, 115 (3d Cir. 2013) (quoting *Snowden v. Hughes,* 321 U.S. 1, 8 (1944)). In other words, the complaint must plead facts permitting a reasonable inference that the officer "selected or reaffirmed a particular course of action at least in part because

---

[21] *See, e.g., Commonwealth v. Neal*, 331 A.3d 635, 636 (Pa. Super. 2024) (defendant attacking "in an unexpected manner" was relevant to recklessness determination).

of, not merely in spite of, its adverse effects" on a protected group. *Wayte v. United States*, 470 U.S. 598, 610 (1985) (internal quotation marks and citation omitted).

Matthie does not meet that burden. Setting aside his conclusory assertions of racial animus—which I need not credit at the pleading stage, *see Baraka,* 481 F.3d at 195—Matthie alleges only that Goodman was "aware of Plaintiff's race . . . before he prepared documents necessary for an arrest warrant." Pltf. Br. at 18; *see also* FAC at ¶¶ 30–32. But awareness is not the same thing as intent. Without additional factual allegations suggesting that Goodman acted *because* of Matthie's race, Matthie has not pleaded purposeful discrimination. *See Snowden,* 321 U.S. at 8 ("[D]iscriminatory purpose is not presumed . . . there must be a showing of clear and intentional discrimination[.]" (internal quotation marks and citations omitted)); *PG Publ'g,* 705 F.3d at 115 (holding that allegations of "some instances" of differential treatment were "insufficient" to allege a discriminatory purpose).

In sum, Matthie has not plausibly alleged that Goodman's charging decision reflected both discriminatory effect and discriminatory purpose. Qualified immunity therefore bars the selective enforcement claim, and it will be dismissed.

### B. Other Claims

Matthie presses two additional claims—malicious prosecution under Pennsylvania law and municipal liability under § 1983. Both rise and fall with the conclusions reached above and therefore require only brief discussion.

### 1.  State Law Malicious Prosecution

Although not foreclosed by qualified immunity, *El*, 975 F.3d at 334 ("[Q]ualified immunity is a defense only to violations of federal law under § 1983."), Matthie's Pennsylvania malicious-prosecution claim fails for the same basic reason his federal claim fails: probable cause. Under Pennsylvania law, to prove a malicious prosecution claim a plaintiff must show that the defendant "instituted proceedings against the plaintiff 1) without probable cause, 2) with malice, and 3) the proceedings must have terminated in favor of the plaintiff." *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017) (quoting *Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988)). Critically, as Matthie concedes, the existence of probable cause is fatal to his state law claim. *See* Pltf. Br. at 15 ("[P]robable cause is a defense to state law malicious prosecution[.])

For the reasons already explained, the FAC does not plausibly allege that no probable cause existed for the charges Goodman pursued. Accordingly, Matthie fails to state a Pennsylvania malicious prosecution claim against Goodman, and that claim will be dismissed.

### 2.  Municipal Liability

Finally, Matthie alleges that Defendant Sandy Township maintained a pattern or practice of overcharging African-American criminal defendants, in violation of § 1983. (FAC at ¶¶ 154–161). A municipality may be held liable under § 1983 only

when a plaintiff's injury was caused by the municipalities own "policy or custom." *Monell,* 436 U.S. at 694. To state such a claim, a plaintiff must plausibly allege (1) an underlying constitutional violation and (2) that "the municipality caused that constitutional violation through a policy, a custom, or a failure to train or other inadequacy." *Onyiah v. City of Philadelphia*, 660 F. Supp. 3d 407, 417 (E.D. Pa. 2023). Thus, critically, "for there to be municipal liability, there still must be a violation of the plaintiff's constitutional rights." *Brown v. Commonwealth of Pennsylvania, Dep't of Health Emergency Med. Servs. Training Inst.,* 318 F.3d 473, 482 (3d Cir. 2003).

Because Matthie has not plausibly alleged that Goodman violated his constitutional rights, there is no predicate constitutional injury on which to premise *Monell* liability. The § 1983 claim against Sandy Township therefore fails and will be dismissed.

Accordingly, I will enter the following:

### **ORDER**

AND NOW, this 9th of February, 2026, for the reasons set forth herein, IT IS ORDERED that Defendants' Motion to Dismiss (ECF 19) is GRANTED, and Counts I, III, V, and VII of Plaintiff's First Amended Complaint are dismissed with prejudice.

/s/D. Brooks Smith

D. Brooks Smith
United States Circuit Judge
Sitting by Designation